IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

JAMES C. STUART,               )
                              )
          Plaintiff,          )
                              )
                              )        CIV-10-1026-R
v.                            )
                              )
DONALD STEER, et al.,         )
                              )
          Defendants.         )


REPORT  AND  RECOMMENDATION

In this 42 U.S.C. § 1983 action filed by Plaintiff, a state prisoner[1] appearing *pro se*,

Plaintiff alleges that the Defendants, who are Cimarron Correctional Facility ("CCF")

officials and Oklahoma Department of Corrections ("DOC") officials, violated his

constitutional rights.  Plaintiff alleges in ground one that Defendants retaliated against him

by confiscating legal papers from his cell at CCF during a cell search conducted over a three-

day period in March 2010. Complaint, at 4. In ground two, Plaintiff alleges Defendants

Morton, Taylor, Middleton, Sebenick, and Choate "perverted and abused the [DOC]

Grievance Policy and Procedures in violation of the 1st, 8th, and 14th Amendments."

_____

          [1]Plaintiff is serving a sentence of life imprisonment without parole entered in the District
Court of Cherokee County, Case No. CF-1997-339.

                                        1

Complaint, at 4. In his third and final ground for relief, Plaintiff alleges that Defendants Dorame, Munday, and Steer "subjected Plaintiff to unnessary [sic] and excessive use of force" on two occasions, "out of retaliation, in violation of the 1st and 8th Amendments."[2] Complaint, at 5. For these alleged constitutional violations, Plaintiff seeks declaratory and injunctive relief, compensatory damages, and one million dollars in punitive damages. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B).

Defendants Choate, Dorame, Middleton, Munday, Sebenick, Steer, and Taylor have moved to dismiss the cause of action pursuant to 42 U.S.C. § 1997e(a) and Fed. R. Civ. P. 12(b)(6). (Doc. # 21). Defendant Morton has separately moved to dismiss the cause of action pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) or, alternatively, for summary judgment pursuant to Fed. R. Civ. P. 56. (Doc. # 24). Plaintiff has responded to these dispositive motions.[3] (Docs. # 30, 31, 32). As ordered by the Court, Defendants have also caused the filing of a Special Report consistent with Martinez v. Aaron, 570 F.2d 317 (10th Cir.

---

[2]To the extent Plaintiff attempts to assert other claims, they are unintelligible and will not be addressed. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)(stating that "[t]he broad reading of the plaintiff's [*pro se*] complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

[3]Plaintiff's responsive pleadings do not contain a certificate of mailing, as required by local court rules, to show the responsive pleadings were mailed to Defendants. LCvR 5.4(b). However, pleadings are posted upon receipt in the Court's electronic case management records. Hence, the undersigned assumes that Defendants, through their attorneys, have received the Notice of Electronic Filing generated by the Court's Electronic Case Filing System, LCvR 5.4(c), and are aware of the filing of Plaintiff's responsive pleadings.

1978)(hereinafter "Special Report"). For the following reasons, it is recommended that Defendants' motions to dismiss be granted and that the cause of action be dismissed due to Plaintiff's failure to exhaust administrative remedies and failure to state a claim upon which relief may be granted.

I. Standard of Review

The Prison Litigation Reform Act ("PLRA"), enacted in 1996, directs that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion requirements are designed to ... give the agency a fair and full opportunity to adjudicate their claims" before the plaintiff proceeds to file an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006). This provision applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court even when the administrative procedure fails to provide a particular type of relief, such as monetary damages. Booth v. Churner, 532 U.S. 731, 734, 741 (2001).

Failure to exhaust administrative remedies is an affirmative defense. Jones v. Bock, 549 U.S. 199, 215-216 (2007). Once the affirmative defense is raised, the Court must determine whether the Plaintiff properly exhausted administrative remedies. An inmate may

only exhaust by properly following all of the steps set forth in the prison's grievance procedures. Woodford, 548 U.S. at 90 (quotation and citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim . . . ." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, all well-pleaded facts, as distinguished from conclusory allegations, are accepted as true, and those facts are viewed in the light most favorable to the non-moving party. Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005). To survive a motion to dismiss, a complaint must present factual allegations that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). This review contemplates the assertion of "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Thus, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. Id. at 558.

A *pro se* plaintiff's complaint must be broadly construed under this standard. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the generous construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal

claim could be based." <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991). <u>See</u> <u>Whitney v. New Mexico</u>, 113 F.3d 1170, 1173-1174 (10th Cir. 1997)(courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf"). A court evaluating a Rule 12(b)(6) motion to dismiss may consider the complaint as well as any documents attached to it as exhibits. <u>Hall</u>, 935 F.2d at 1112.

"Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." <u>Perkins v. Kansas Dep't of Corr.</u>, 165 F.3d 803, 806 (10th Cir. 1999). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). No "heightened fact pleading" is required under this standard, "but only enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570. In reviewing the sufficiency of the complaint, the court presumes all of the plaintiff's "well-pleaded facts" but not "conclusory allegations" to be true. <u>McBride v. Deer</u>, 240 F.3d 1287, 1289 (10th Cir. 2001)(internal quotation omitted). A *pro se* plaintiff's complaint must be broadly construed under this standard. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). However, the court reviewing the sufficiency of a complaint "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." <u>Whitney v. New Mexico</u>, 113 F.3d 1170, 1173-1174 (10th Cir. 1997).

Summary judgment may be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(a). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted), cert. denied, 550 U.S. 933 (2007). "At the summary judgment stage, a complainant cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Id. at 1258 (internal quotation marks and citations omitted).[4] However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris,550 U.S 372, 381 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quotations omitted).

II. Count One

In count one of the Complaint, Plaintiff asserts that Defendants Sebenick and Choate retaliated against Plaintiff by conducting a search of his cell in March 2010 and confiscating Plaintiff's legal papers. Complaint, at 4. Plaintiff contends that these actions were taken in "retaliation because I have a pending Law Suit against [CCF]." Complaint, at 4. Plaintiff

---

[4]In a prisoner civil rights case such as this one, the plaintiff's complaint is treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. Hall, 935 F.2d at 1111.

clarifies that in ground one he is "not claiming denial of access to the Courts."[5] Id.

Defendants contend that Plaintiff failed to exhaust available administrative remedies as to his claim of unconstitutional retaliation asserted in ground one. Plaintiff asserts that he exhausted available remedies as to all of his claims set forth in the Complaint by submitting his grievances numbered 10-59 and 10-97.

DOC has a "four-step process for administrative exhaustion of prisoner claims. Initially, a prisoner must seek to resolve any complaint by informally raising the matter with an appropriate staff member." Little v. Jones, 607 F.3d 1245, 1249 (10th Cir. 2010). If the issue is not resolved informally, an inmate must submit a Request to Staff ("RTS") within seven days of the alleged incident. Oklahoma Department of Corrections Inmate/Offender Grievance Process, § IV.B. Special Report, Doc. # 20, Ex. 6. If the issue is still unresolved, the prisoner must file a Grievance Report Form ("grievance") with the reviewing authority, which is generally the warden of the prison. Id. at § V.A. If the grievance decision does not satisfactorily resolve the issue, the inmate must appeal the grievance decision to the

_____

[5]In his responsive pleading, Plaintiff argues he is also asserting a violation of his rights under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff relies on Village of Willowbrook v. Olech, 528 U.S. 562 (2000), in which the Supreme Court recognized certain equal protection claims may be brought by a "class of one, where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at 564 (internal quotation marks and citations omitted). However, Plaintiff's grievances did not assert that the Defendants intentionally treated him differently than other inmates. Plaintiff has failed to exhaust administrative remedies concerning his equal protection claim, and he has also failed to state a claim of an equal protection violation.

Administrative Review Authority ("ARA").[6] Id. at § VII.B.  According to DOC's grievance procedure, "[t]he ruling of the [ARA] . . . is final and [concludes] the internal administrative remedy available to the inmate . . . " Id. at § VII.D.1.

The following facts from Plaintiff's Complaint and uncontroverted documents submitted with the Special Report are considered in resolving Defendants' motions. See Hall, 935 F.2d at 1111 (court may consider Special Report when dismissing a claim, but the court "cannot resolve material disputed factual issues by accepting the report's factual findings when they are in conflict with pleadings or affidavits").  On May 12, 2010, Plaintiff submitted an RTS to Defendant Sebenik in which he sought the return of certain property, described as legal materials in two pending state court cases, allegedly confiscated by Defendant Sebenik and a case manager from his cell on March 9 or 10, 2010. Special Report, Doc. # 20, Ex. 5, at 7.  Defendant Sebenik responded to this RTS the following day and stated he was "not aware of any legal documents or any documents being removed from your cell.  If you could be more specific." Id.

In an RTS submitted on May 12, 2010, to Defendant Choate, Plaintiff sought the return of "my legal files confiscated/removed from my cell by you and I.A. Sebanik [sic] on 3-9-10 and 3-10-10." Special Report, Doc. # 20, Ex. 5, at 24.  Defendant Choate responded on May 14, 2010, that the legal materials described by Plaintiff were not in Plaintiff's

_____

[6]The grievance procedure defines the ARA as "[t]he director, chief medical officer, or their designee to whom the formal grievance is submitted for final appeal." Id. § I(E).

property at the time his property was inventoried by prison officials. <u>Id.</u>

Plaintiff submitted a grievance, identified as grievance number 10-58, to Defendant Warden Taylor on May 18, 2010. In this grievance, Plaintiff asserted that Defendants Choate and Sebenick confiscated legal papers concerning pending Oklahoma court cases from Plaintiff's cell "or or about March 9, 10, 11." <u>Id.</u> at 23. As relief, Plaintiff requested that Defendant Taylor "[i]nstruct Ray Choate to return or replace the legal documents for the cases listed above. They are available from the Court Clerk." <u>Id.</u> Plaintiff's grievance did not mention any retaliatory motive for the cell search or alleged property confiscation. In response to this grievance, Plaintiff was informed by a CCF official that the grievance was returned to him unanswered because it was submitted "[o]ut of time from the date of the incident." <u>Id.</u> at 22. There is nothing in the record showing that Plaintiff appealed the grievance decision.

Plaintiff submitted another grievance on May 18, 2010, which was identified as grievance number 10-59. <u>Id.</u> at 6. In this grievance, Plaintiff requested the return or replacement of "confiscated legal documents" removed from his cell by Defendants Choate and Sebenik. There is no mention of a retaliatory motive for the cell search or alleged property confiscation in this grievance. In response to this grievance, Plaintiff was again informed by a CCF official that the grievance was returned to him unanswered because it was submitted "[o]ut of time from the date of the incident." <u>Id.</u> at 5. Plaintiff submitted an appeal of grievance number 10-59 to DOC's ARA. In his appeal, Plaintiff stated that he was only requesting the return or replacement of the legal papers confiscated by Defendants Choate

and an "I.A. Investigator," which included documents from cases pending in the Oklahoma Supreme Court and the Oklahoma Court of Criminal Appeals. Id. at 3-4. Plaintiff asserted that "[k]eeping them or destroying" the legal papers was violating his Sixth and Fourteenth Amendment rights. Id.

Defendant Morton, in her capacity as DOC's ARA, informed Plaintiff that his attempted grievance appeal was returned to him unanswered because it was procedurally deficient. Specifically, Plaintiff was advised by Defendant Morton that he had "not properly filled out the grievance form with all the necessary information" or "offered any proof" that he timely submitted an RTS concerning the issue. Id. at 2. Plaintiff submitted a letter to Defendant Morton asking her to reconsider this issue. Id. at 9. Defendant Morton responded that Plaintiff had not provided documentary evidence to show that he initiated the grievance procedure in a timely manner. Id. at 8.

Defendants contend that Plaintiff failed to exhaust available administrative remedies with respect to his retaliation claim in ground one.[7] Plaintiff counters that, contrary to the

---

[7]Defendant Morton contends in her Motion to Dismiss/Motion for Summary Judgment that Plaintiff incorrectly attempted to grieve a private prison property issue using the DOC administrative grievance procedure. According to DOC's grievance policy, "[p]rivate prison property issues are not grievable" through DOC's administrative grievance procedure. Special Report, Doc. # 20, Ex. 6, at 4 (DOC OP-090124.II.B.4). Although Defendant Morton contends that Plaintiff had an available administrative grievance procedure at CCF, which Plaintiff failed to exhaust, there is nothing in the record concerning a separate administrative grievance procedure at CCF, and Defendant Morton's Motion to Dismiss Plaintiff's claim in ground one based on Plaintiff's failure to exhaust CCF's administrative grievance procedure should be denied. Alternatively, Defendant Morton asserts, as have the remaining Defendants, that Plaintiff failed to exhaust DOC's administrative grievance procedure or, alternatively, Plaintiff failed to state a claim for § 1983 relief with respect to his claim in ground one.

Defendants' argument, he did submit a timely RTS. However, even assuming the truth of this unsupported assertion, Plaintiff has not demonstrated that he raised his First Amendment retaliation claim in his administrative grievances. Rather, Plaintiff asserted in his grievance appeal to the ARA that the confiscation of his legal papers was hindering his Sixth Amendment right of access to the courts, a claim that he expressly denies he is raising in the instant action.

Furthermore, assuming the truth of Plaintiff's allegation that he submitted a timely RTS but did not receive a response to the RTS, DOC's administrative grievance procedure provides that "[i]f there has been no response in 30 calendar days of submission [of an RTS], the offender may file a grievance to the reviewing authority with evidence of submitting the [RTS] to the proper staff member." Special Report, Doc. # 20, Ex. 6, at 7 (OP-090124.IV.B.7. Plaintiff does not allege, and there is no evidence, that Plaintiff sought administrative relief under this provision. It is Plaintiff's burden to show he has exhausted administrative remedies, and Plaintiff has not satisfied this burden with respect to his First Amendment retaliation claim in ground one. Contrary to Plaintiff's hyperbolic assertion in his responsive pleading (Doc. # 31) that DOC's grievance procedure is a "confusing Byzantine Maze," the established grievance procedure is clearly set forth in simple, easily-understandable terms. Unfortunately, Plaintiff's responsive pleadings evidence a strong desire to denigrate and place blame on correctional officials rather than accept his obligation to complete the administrative grievance process. Because Plaintiff has failed to exhaust available administrative remedies, Defendants' motions to dismiss this claim on this basis

should be granted.

Alternatively, Plaintiff has failed to state a plausible claim of unconstitutional retaliation in count one. "Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his [constitutional rights.]" <u>Smith v. Maschner</u>, 899 F.2d 940, 947 (10th Cir. 1990). "This principle applies even when the action taken in retaliation would be otherwise permissible." <u>Id.</u> at 948. In order to demonstrate actionable retaliation, however, the plaintiff must at a minimum provide circumstantial evidence of a "chronology of events" supporting an inference of retaliation. <u>Id.</u> at 949. <u>See</u> <u>Shero v. City of Grove, Okl.</u>, 510 F.3d 1196, 1203 (10th Cir. 2007)(stating elements of First Amendment retaliation claim, including "that the Defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct").

Plaintiff's sole allegations in count one are that, at a time when he had a pending action against CCF, his cell was searched in March 2010 and during the cell search certain legal papers belonging to Plaintiff were removed from his cell by Defendants Sebenik and Choate. Cell searches are common occurrences in prisons. Assuming the truth of Plaintiff's assertions, no plausible inference of unconstitutional retaliatory motive has been asserted. Therefore, Defendants' motions to dismiss Plaintiff's claim in ground one for failure to state a claim for relief should be granted.

III. <u>Count Two</u>

In his second ground for relief, Plaintiff asserts that Defendants Morton, Taylor, Middleton, Sebenick, and Choate violated his First, Eighth, and Fourteenth Amendment

12

rights by refusing to respond to his grievances and grievance appeals and by failing to give Plaintiff an opportunity to correct procedural deficiencies. Plaintiff has failed to demonstrate that he exhausted every step of DOC's administrative grievance procedure with respect to his claim in ground two. Plaintiff has also failed to show that any prison official obstructed his ability to exhaust his administrative remedies concerning this claim. Therefore, Defendants' motions to dismiss the claim in count two should be granted as a result of Plaintiff's failure to exhaust administrative remedies.

Alternatively, in count two Plaintiff has failed to state a plausible claim upon which § 1983 relief may be granted. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). The Tenth Circuit Court of Appeals has held that the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under [42 U.S.C.] § 1983." Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009). In this circuit, prison grievance procedures do not create a liberty interest protected by the Due Process Clause. See Gilbreath v. Clark, 193 Fed.Appx. 741, 743, 2006 WL 1997636, *2 (10th Cir. July 18, 2006)(unpublished op.)("prison grievance procedures do not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment")(internal quotation omitted); Murray v. Albany County Bd. of County Comm'rs, No. 99-8025, 2000 WL 472842, *2 (10th Cir. Apr. 20, 2000)(unpublished op.)(same); Anderson v. Colo. Dep't of Corr., No. 98-1477, 1999 WL 387163, at *2 (10th Cir. June 14, 1999)(unpublished

op.)(holding state inmate's § 1983 "allegations relating to the requirements of [state's] grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner"), cert. denied, 528 U.S. 1165 (2000). Additionally, the failure to respond to Plaintiff's grievances did not impose an atypical or significant hardship upon Plaintiff in relation to the ordinary incidents of prison life, and there is no indication that the failure to respond inevitably affected the length of Plaintiff's life sentence. See Sandin v. Conner, 515 U.S. 472, 484, 487 (1995).

Moreover, insofar as Plaintiff alleges Defendants are liable to Plaintiff under § 1983 because Defendants violated DOC's grievance policy, this allegation does not state a claim of a constitutional deprivation. See Gaines v. Stensent, 292 F.3d 1222, 1225 (10th Cir. 2002)("To the extent Gaines seeks relief for alleged violations of state statutes and prison regulations, [ ] he has stated no cognizable claim under § 1983."); Walters v. Corr. Corp. Of America, 119 Fed.Appx. 190, 191, 2004 WL 2801823, *1 (10th Cir. Dec. 7, 2004)("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.")(quotation and citation omitted), cert. denied, 546 U.S. 865 (2005). Therefore, Defendants' motions to dismiss Plaintiff's claim in count two for failure to state a plausible constitutional claim should be granted.

IV. Count Three

In his third ground for § 1983 relief, Plaintiff alleges that Defendants Dorame,

Munday, and Steer violated Plaintiff's Eighth Amendment rights on July 20, 2010, by subjecting Plaintiff to excessive use of force. Furthermore, Plaintiff asserts in count three that the excessive force used by Defendants Dorame, Munday, and Steer was retaliation against Plaintiff for his lawsuits filed against CCF officials in violation of Plaintiff's First Amendment rights.

In the incident alleged in support of Plaintiff's excessive-force and retaliation claims, Plaintiff alleges that on July 20, 2010, Defendants Dorame and Munday were "conducting entrance searches" at the entrance to the CCF dining hall. Complaint, at 5. Plaintiff alleges that as he was entering the CCF dining hall Defendant Dorame assaulted Plaintiff by "putting hands" on Plaintiff and "intentionally broke Plaintiff's glasses." Complaint, at 6-7. Plaintiff also alleges that Defendant Dorame shouted to Plaintiff to "sue me, sue me" in "direct reference to the lawsuit which plainitff [sic] has recently filed in the District Court of Payne County, now on appeal in the Court of Civil Appeals as Case No. 108,034." Complaint, at 6. Plaintiff alleges that prior to this incident he "told Defendant Choate that he was in the process of filing a lawsuit against him and some other CCF officials in federal court (this lawsuit)." Id. Plaintiff asserts that the use of excessive force committed by Defendant Dorame was directed by Defendant Choate "out of retaliation for [Plaintiff's] past and planned future lawsuits."[8] Id. Plaintiff further alleges that Defendant Steer, who was the

---

[8]Plaintiff alleges other incidents in count three involving other inmates and Defendants Choate and Dorame. However, Plaintiff does not state a claim for § 1983 relief with respect to these allegations. Plaintiff further alleges that Defendant Choate's employment at CCF violates state law.

CCF Chief of Security, "allow[ed] this to occur and laugh[ed] about" it. Complaint, at 7. Plaintiff contends that because of this incident he suffered and continues to suffer "extreme emotional distress" and psychological symptoms, "including depression, anxiety, disturbed sleep, and fear of future assaults by Officers." Id.

Defendants contend that Plaintiff failed to exhaust available administrative remedies concerning his retaliation and excessive-force claims asserted in count three. Plaintiff contends that he exhausted administrative remedies by submitting grievance number 10-97 to Defendant Warden Taylor and by appealing Defendant Warden Taylor's adverse response. The uncontested Special Report reflects that on July 23, 2010, Plaintiff submitted grievance number 10-97 to Defendant Warden Taylor. Special Report, Doc. # 20, Ex. 5, at 19-21. Plaintiff labeled this grievance "emergency and sensitive per OP-090124 . . . ." Id. at 21. DOC's grievance policy permits inmates to submit an emergency or sensitive grievance directly to the warden of a facility. Special Report, Doc. # 20, Ex. 6, at 13 (DOC OP-090124.VIII.A.1 and 2).

Plaintiff asserted in this grievance that when he entered the dining hall on July 20, 2010, Defendants Dorame and Steer "wanted to shake me down" and that Plaintiff "got into position and waited." Id. Plaintiff stated that because Dorame and Steer "did nothing," Plaintiff then "started down the line" to get his meal. Id. However, Plaintiff stated that Defendant Dorame "started yelling at me and grabbed me and pushed me around using

This assertion also fails to state a claim upon which § 1983 relief may be granted.

16

unnecessary force and excessive force," "jerked my eyeglasses and case from my shirt pocket," and "intentionally broke my glasses." Id. at 20. Plaintiff alleged that Defendants Dorame, Steer, and Munday then "pushed [Plaintiff] through the entrance door" and advised Plaintiff to return to his unit without his evening meal. Id. Plaintiff alleged in the grievance that Defendant Dorame yelled at Plaintiff, "Why don't you sue me" and "sue me," which Plaintiff alleged was "retaliati[on] against me for my lawsuit against [CCF]." Id. Plaintiff further alleged that Defendant "Steer assisted Dormane [sic] and Munday in covering all this up," and that Defendants Steer, Dorame, and Munday's actions caused Plaintiff "extreme emotional distress and unwanted fear." Id. As relief, Plaintiff requested that Defendant Warden Taylor "[e]nd the employment[t]" of Defendants Steer, Dorame, and Munday. Id. at 21.

In a response to this grievance, Defendant Warden Taylor advised Plaintiff that the grievance was denied and explained his decision:

> I have found this not to be an Emergency or Sensitive Grievance. 1. You walked away from where you were told to stand for a pat down. You did not have permission to leave. 2. I have questions [sic] COS Steer and A/S Dorame about the glasses being broken, [and] they say that your glasses were not broken [and] were removed from your pocket when searching you. 3. You were told that you could go back to chow hall with your unit and you did not return. I have also checked with medical [and] you have not been to medical for any injuries or broken glasses at or about that time frame. You have not produced one piece of evidence of what you are claiming.

Id. at 19.

Plaintiff appealed this grievance decision to DOC's ARA. Id. at 17. Plaintiff repeated

his assertions that he was "physically assault[ed]" by Defendants Dorame and Munday, that the assault was "witnessed by Chief of Security Steer," that during the assault Plaintiff's "glasses were deliberately broken by [Defendant] Dorame," and that Defendant Dorame "shouted 'Sue me, sue me' at the time [in] direct reference to the lawsuit I recently filed against CCF prison officials and was obvious retaliation against me." Id. at 18. Plaintiff asserted his "right[s] to be free from retaliation and to be free from cruel and unusual punishment or the intentional infliction of emotional distress" were violated. Id. Defendant Morton, in her capacity as DOC's ARA, responded on August 4, 2010, that the grievance appeal was being returned unanswered because Plaintiff's grievance was not of a sensitive/emergency nature and "[r]equests for disciplinary action against staff will not be addressed in the grievance process." Id. at 16.

DOC's administrative grievance procedure provides that if "the appropriate reviewing authority determines that a grievance is not of an emergency or sensitive nature, the grievance will be returned to the offender with notification that the grievance is not of an emergency or sensitive nature and that the standard grievance process must be followed." Special Report, Doc. # 20, Ex. 6, at 14 (OP-090124.VIII.C). Plaintiff was advised by Defendant Morton that even though his grievance was not of an emergency or sensitive nature he could follow the standard grievance process in order to present his grievance. Special Report, Doc. # 20, Ex. 5, at 16. In response, Plaintiff asserts he attempted to but was unable to complete DOC's standard grievance procedure due to obstruction by CCF officials.

Plaintiff has attached to his responsive pleading a copy of an RTS. Plaintiff's

18

Response (Doc. # 31), Ex. 4. This RTS, dated August 10, 2010, reflects that Plaintiff requested permission from Defendant Warden Taylor to file a grievance out of time as "[t]he original grievance was returned by [Defendant] Morton stating the grievance was not [of a] sensitive/emergency nature." Id. CCF Acting Warden Middleton denied the request. Id. This RTS was submitted six days after the date of Defendant Morton's response to Plaintiff's grievance appeal. Because Plaintiff had not received the required notification of his opportunity to submit his grievance under DOC's standard grievance procedure prior to his receipt of Defendant Morton's response, Acting Warden Middleton obstructed Plaintiff's ability to complete DOC's administrative grievance procedure by refusing to allow Plaintiff to present his grievance.

Nevertheless, assuming Plaintiff had no available administrative grievance process in which to present his grievance concerning his excessive-force and retaliation claims, Plaintiff has failed to state a § 1983 claim upon which relief may be granted. "Ordinarily, an excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." Smith v. Cochran, 339 F.3d 1205, 1212 (10th Cir. 2003). Plaintiff alleged in his grievance that he was "grabbed, "pushed," and "shoved" by Defendants Dorame and Munday, that Defendant Steer watched this assault, and that Defendant Choate directed the assault. Special Report, Doc. # 20, Ex. 5, at 20. Plaintiff alleges his eyeglasses were broken in this incident, but Plaintiff does not allege in his

Complaint or in his grievance concerning this incident that he suffered any physical injuries. Pushing and shoving of an inmate does not give rise to a federal cause of action for the use of excessive force. <u>Sims v. Miller</u>, 5 Fed.Appx. 825, 830, 2001 WL 201946, *3 (10th Cir. Feb. 28, 2001). <u>See</u> <u>Walters</u>, 2004 WL 2801823, at *3 (holding prison official's action of "twice pushing" inmate was de minimis use of physical force that did not state Eighth Amendment claim of cruel and unusual punishment). Although Plaintiff was not required to allege a significant injury in order to state an Eighth Amendment excessive-force claim the extent of his injury "may . . . provide some indication of the amount of force applied." <u>Wilkins v. Gaddy</u>, __U.S.__, 130 S.Ct. 1175, 1178 (2010). Plaintiff has not alleged any physical injury or that he sought medical assistance for a physical injury following his encounter with Defendant Dorame on July 20, 2010. With his responsive pleading, Plaintiff has attached a copy of a form indicating Plaintiff's eyeglasses were "[f]ixed" by an optician who examined Plaintiff's eyes and prescribed sunglasses for Plaintiff on August 5, 2010. This evidentiary document does not create any inference of an Eighth Amendment violation. Assuming the truth of Plaintiff's assertions in his grievance and Complaint with respect to his excessive-force claim, Plaintiff has failed to state a plausible claim of an Eighth Amendment violation against Defendants Dorame, Munday, Steer, and Choate. Thus, Defendants' Rule 12(b)(6) motions to dismiss Plaintiff's Eighth Amendment claim of excessive force asserted in count three should be granted.

Plaintiff also alleges that the assault and battery that occurred on July 20, 2010, was retaliation for his filing of lawsuits against CCF officials. However, Plaintiff has presented

only conclusory allegations of a retaliatory motive. Assuming the truth of Plaintiff's allegation that Defendants knew Plaintiff had filed lawsuits or was planning to file a lawsuit against CCF officials and that Defendant Dorame yelled "sue me" to Plaintiff during or after the incident, these facts do not create a plausible inference of a retaliatory motive. Because Plaintiff has failed to state a plausible retaliation claim in count three, Defendants' Rule 12(b)(6) motions to dismiss this retaliation claim should be granted.

In count three, Plaintiff alleges another instance of unconstitutional retaliation. Plaintiff alleges that on August 6, 2010, he was stopped by Defendant Munday and informed he could not enter the CCF dining hall because he had "set off the metal detector, as he always does due too [sic] multiple metal implants." Complaint, at 8. Plaintiff states that although he showed a "Medical Memo stating the Plaintiff has metal in body" to Defendant Munday, Defendant Munday told Plaintiff to "take it up with Medical, and that Plaintiff was not going to eat in 'His' chow hall." Id. Plaintiff alleges that he told Defendant Monday he "was going to file a Grievance against [Munday]" and Defendant Munday then yelled at Plaintiff to "sue me, sue me, you're good at sueing [sic] people . . . in direct reference to the fact that Plaintiff had recently filed a Law Suit against certain CCA [sic] officials." Id. Plaintiff asserts that he submitted an RTS to Defendant Steer about this incident on August 7, 2010, but that Defendant Steer "refuses to answer" the RTS. Id.

Plaintiff admits in his Complaint, and the record shows, that Plaintiff has failed to exhaust available administrative remedies concerning the second retaliation claim asserted in count three. Plaintiff does not allege he submitted a grievance concerning Defendant

Steer's failure to respond to the RTS. Consequently, Defendants' motions to dismiss this claim should be granted on the basis of Plaintiff's failure to exhaust available administrative remedies.

Alternatively, Plaintiff has failed to state a plausible § 1983 claim of unconstitutional retaliation. Assuming the truth of Plaintiff's allegations, Plaintiff has alleged no facts from which to infer a retaliatory motive existed for Defendant Munday's refusal to allow Plaintiff to enter the dining hall on one occasion in August 2010 after Plaintiff set off the metal detector. Plaintiff admits he was cleared to return to the dining hall by "Nurse Morris" only 15 minutes later, but he voluntarily chose not to return to the dining hall to eat "out of fear" of Defendant Munday. Although it may have been unprofessional for Defendant Munday to encourage Plaintiff to "sue" him for denying Plaintiff access to the dining hall, the statement by Defendant Munday, if true, does not create a plausible inference of retaliatory motive. Permitting Plaintiff an opportunity to amend his Complaint would be futile.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants Choate, Dorame, Middleton, Munday, Sebenick, Steer, and Taylor's Motion to Dismiss (Doc. # 21) and Defendant Morton's Motion to Dismiss (Doc. # 24) be GRANTED and that the cause of action be dismissed pursuant to 28 U.S.C. § 1997e and Fed. R. Civ. P. 12(b)(6) for failure to exhaust administrative remedies and failure to state a § 1983 claim upon which relief may be granted. Plaintiff is notified that a dismissal of this cause of action under Fed. R. Civ. P.

12(b)(6) for failure to state a claim may constitute one "strike" pursuant to 28 U.S.C. §1915(g) upon affirmance or waiver of the opportunity to appeal. Plaintiff is advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by ___March 22nd___, 2011, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf. Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___2nd___ day of ___March___, 2011.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE